Below is a Memorandum Decision of the Court.



_____
**Paul B. Snyder**
**U.S. Bankruptcy Court Judge**
(Dated as of Entered on Docket date above)

_____

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF WASHINGTON AT TACOMA

In re:

THOMAS STEPHEN KLUTZ, JR and
HEIDI SUE KLUTZ,

Debtors

Case No. 12-47522

**MEMORANDUM DECISION**

**NOT FOR PUBLICATION**

This matter came on for an evidentiary hearing on October 2 and 3, 2013, on an objection to the claim of William Thorbecke and Regina Norby-Thorbecke (Creditors) by Thomas and Heidi Klutz (Debtors). Taking into consideration the pleadings, evidence and arguments of counsel, the Court's findings of fact and conclusions of law are as follows:

Thomas Klutz has a prior work history of owning and operating restaurants. He also worked previously for Kahala Franchise Corporation (Kahala) as a development officer and as a trainer, training new employees and assisting in the start-up operations of new franchise restaurants. On May 4, 1999, the Debtors entered into a Franchise Agreement with SP Franchising, Inc. for the operation of a Samurai Sam's Teriyaki Grill (Samurai Sam's) restaurant located at 1401 SE 164th Avenue, # 150, Vancouver, Washington (Restaurant). SP Franchising, Inc. is the predecessor of Kahala. Samurai Sam's was not a legal entity but rather a trade name Kahala owned. The Debtors also owned and had owned other Samurai Sam's

MEMORANDUM DECISION - 1

franchises in Clark County, and often operated restaurants, including the one located at 164th, through Hit Enterprises, LLC (Hit).

In November 2005, the Debtors sold the Restaurant to the Creditors. Kyle Leonard, Regina Norby-Thorbecke's son and William Thorbecke's stepson, was also a purchaser. Kyle Leonard also had worked as a trainer for Kahala and for Thomas Klutz, starting as a cook in his restaurant and eventually as a general manager. Almost all of the discussions involving the sale of the Restaurant were between Kyle Leonard and Thomas Klutz. It was clear from the start of their negotiations that the financing was to be done by Mr. Leonard's parents, the Creditors. The transaction was structured to allow the Creditors to avoid paying the initial franchise transfer fee of $5,000 or $10,000 at the time of purchase, but would require them to make monthly franchise royalty payments (Royalty Payments) to Kahala through the Debtors. Kyle Leonard testified that he was of the belief that they had Kahala's permission to structure the purchase in this manner, either in a conversation he had directly with Sean Wieting, the President of Samurai Sam's trade name, or in conversations he had overheard between Thomas Klutz and Sean Wieting.

As part of the transaction, the Debtors provided the Restaurant's Profit and Loss Statements for the previous three years to the Creditors. Thomas Klutz testified that he also provided the Creditors with a copy of the Franchise Agreement with SP Franchising, Inc./Kahala. William Thorbecke does not recall receiving the Franchise Agreement. He testified he met with the Debtors only twice, one time of which was at the signing of the agreements to purchase the Restaurant. The Creditors had no experience buying or selling businesses or franchises. There were almost no discussions regarding the franchise, although the Creditors were aware that they would not be making direct monthly Royalty Payments to the franchisor, Kahala. They were told by Kyle Leonard that Kahala had given its permission to

MEMORANDUM DECISION - 2

structure the Restaurant purchase in this manner. They did not employ an accountant to review the Profit and Loss Statements or tax returns of the Restaurant, negotiate the purchase price or employ an attorney to review the documentation provided by the Debtors. The evidence is clear that the Creditors relied almost exclusively on Mr. Leonard's expertise in purchasing the Restaurant.

The most credible evidence establishes that it was understood between the parties that the Creditors would operate the Samurai Sam's Restaurant under the Debtors' franchise. This is because under the Franchise Agreement, the Debtors were allowed to transfer their franchise rights only upon Kahala's approval and payment of a transfer fee.

The purchase price of the Restaurant was $170,000. On November 16, 2005, the Creditors and the Debtors executed several documents to effectuate the sale of the Restaurant. These documents included: (1) an Agreement to Sell Business; (2) Schedule A, Asset Listing; (3) an Addendum/Amendment to Purchase and Sale Agreement; (4) Schedule B, Promissory Note for the remaining balance of the purchase price; (5) Schedule C, an amortization schedule for payment on the balance of the purchase price; and (6) Schedule D, a Bill of Sale of Business (collectively referred to as the "Agreement").

The Agreement to sell the business stated, "[T]he Seller desires to sell and the Buyer desires to buy the business now being operated at 1401 S.E. 164th Avenue, # 150, Vancouver, Washington, 98683 and known as Samurai Sam's Teriyaki Grill and all assets thereof as contained in Schedule 'A' attached." The Bill of Sale of Business stated that the Debtors were selling to the Creditors, "The whole of the good will of the Samurai Sam's Teriyaki Grill business formerly operated by the undersigned which is the subject of this sale." The Creditors paid $60,000.00 in cash, with the remaining $110,000.00 due to the Debtors by November 15,

MEMORANDUM DECISION - 3

2010, paid according to the terms of the executed Promissory Note requiring monthly payments of $2,204.17.

The Creditors formed Dragon Fire Investments, LLC. (Dragon Fire) to operate the Restaurant. After the sale, Thomas Klutz remained available to answer questions and provide guidance as to the Restaurant operations.

The Creditors paid the monthly amount due on the Promissory Note. In addition to the amount due on the Promissory Note, the Creditors also paid the monthly franchise Royalty Payment to the Debtors, who then sent the payment to Kahala. Using a formula, the parties regularly met to calculate the franchise Royalty Payment based on the Restaurant's profits. In October 2006, the Debtors informed the Creditors by e-mail that they should send future Royalty Payments directly to Kahala.

Documented in the minutes of a March 19, 2007, member meeting of Dragon Fire, the Creditors agreed to Mr. Leonard's resignation and withdrawal as a member. It was also memorialized in the minutes that the Restaurant had no hard assets or intangible value as of that date. Almost three months later, on June 21, 2007, Kahala sent a letter to the Creditors, informing them that the Debtors were the only authorized franchisee of the 164th Avenue location and thus, the Creditors' operation of the Samurai Sam's Restaurant was unauthorized. The letter advised them that they could commence the process to transfer the franchise to Dragon Fire. The Creditors responded through counsel on July 9, 2007, that their business "has struggled" and the "success of the Samurai Sams franchise name, mark and reputation have failed to materialize." As a result, on July 9, 2007, the Creditors discontinued the use of the Samurai Sam's name, mark and logos and changed the operation and name of the Restaurant. The Restaurant closed on February 28, 2008, after sustaining continual losses and the assets were subsequently sold.

MEMORANDUM DECISION - 4

**Below is a Memorandum Decision of the Court.**

In April 2007, Kahala sued the Debtors for breach of the Franchise Agreement in Clark County Superior Court for the State of Washington. The Debtors filed a third party claim against the Creditors for failure to make payments on the Promissory Note. The Creditors asserted affirmative defenses, including illegality of the contract, breach of contract, fraud, and violation of Washington State's Franchise Investment Protection Act, RCW 19.100 (FIPA), as well as counterclaims, including fraud, misrepresentation, and violation of the registration requirements of FIPA.

During the pendency of the state trial court proceeding, the Creditors made their Promissory Note payments into the registry of the court. On April 15, 2009, the state trial court entered a Memorandum of Decision denying the Creditors' summary judgment motion, stating, that a "business was purchased, not a transfer in franchise." On September 4, 2009, the state trial court granted the Debtors' renewed motion for summary judgment on the Promissory Note. A Judgment was signed on September 17, 2009, ordering the Creditors to pay the Debtors the entire amount remaining on the Promissory Note of $77,175.40, prejudgment interest of $12,258.20, and attorney fees and costs of $17,914.30.

The Creditors appealed the state trial court's order granting summary judgment. The Washington State Court of Appeals (Court of Appeals) subsequently overturned the state trial court's decision concluding there were disputed issues of material fact. <u>Kahala Franchise Corp. v. Hit Enters., LLC, et al</u>, 159 Wn.App. 1013 (2011). On remand, the state trial court entered a judgment in favor of the Creditors for the sum of $107,347.90, as the Creditors had chosen to pay the entire judgment rather than post a supersedes bond. These funds had been released to the Debtors prior to the Court of Appeals' decision.

The Debtors filed bankruptcy on November 1, 2012, under Title 11, Chapter 13. The Creditors filed a Proof of Claim in the amount of $172,012.77 on February 24, 2013. The

MEMORANDUM DECISION - 5

Debtors objected to the claim of the Creditors on March 20, 2013. This Court set an evidentiary hearing to resolve the issues.

The Debtors' discharge or dischargeability of the Creditors' debt is not at issue. The issue is whether the Debtors owe Creditors any damages and the validity of the Proof of Claim. The Creditors assert that they are owed a return of the money paid to the Debtors under theories of fraud, rescission and/or breach of contract.

The Creditors first assert that they should be able to rescind the Agreement with the Debtors. After receiving the letter from the attorney for Kahala on June 21, 2007, however, they continued to operate the Restaurant, eventually selling the assets after it closed in February 2008. Generally, a party wishing to avoid a contract has the choice of either continuing to perform and sue for damages or to promptly rescind. See Salter v. Heiser, 39 Wn.2d 826, 831 (1952). When a party remains in possession of the property, it is deemed to have waived the remedy of rescission. Fines v. West Side Implement Co., 56 Wn.2d 304, 309-311 (1960). In the state trial court proceeding, the Creditors continued to make payments on the Promissory Note until July 2007. There is no evidence that they promptly made a demand for rescission. Secondly, Washington State case law provides that once a party sells the subject matter of the contract, they waive their right to rescind. See Weitzman v. Bergstrom, 75 Wn.2d 693, 697 (1969). As indicated, besides continuing to operate the Restaurant, the Creditors sold the assets after closing the Restaurant without tendering the assets first to the Debtors. Accordingly, the Creditors in this case are not entitled to the remedy of rescission.

The Creditors next argue that the Debtors committed fraud in the inducement by not disclosing the fact that they had not obtained permission from Kahala to transfer the franchise to the Creditors.

MEMORANDUM DECISION - 6

The general rule is that fraud is never presumed. Beckendorf v. Beckendorf, 76 Wn.2d. 457, 462 (1969). A plaintiff bears the burden of proving all essential elements of fraud by clear, cogent and convincing evidence. Beckendorf, 76 Wn.2d at 462. To sustain a finding of common law fraud, the trial court must make findings of fact as to each of the nine elements of fraud. Howell v. Kraft, 10 Wn.App. 266, 271 (1973). These elements are: (1) a representation of an existing fact, (2) its materiality, (3) its falsity, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the person to whom it is made, (6) ignorance of its falsity on the part of the person to whom it is made, (7) the latter's reliance on the truth of the representation, (8) his right to rely upon it, and (9) his consequent damage. See Turner v. Enders, 15 Wn.App. 875, 878 (1976).

At the evidentiary hearing, the testimony of the parties was mostly consistent. William Thorbecke admitted that his stepson informed him that Samurai Sam's was a franchise and that he almost exclusively relied on his stepson's expertise, as he had worked for both the Debtors and Kahala. Mr. Thorbecke further testified that although he thought he was purchasing a franchise from the Debtors, he acknowledged that he did not pay Kahala's a franchise transfer fee and made monthly Royalty Payments through the Debtors. Mr. Leonard thought they had permission to structure the purchase in this manner, even though he could not recall if he received this information from conversations he had directly with the President of Samurai Sam's, Sean Wieting, or had overheard it in conversations between Thomas Klutz and Sean Wieting. Thomas Klutz also testified that he had received permission directly from Sean Wieting to structure the sale in this manner.

The most credible evidence establishes that the Debtors did not make a false representation that they had transferred franchise rights to the Creditors or promised profitability. Although the Agreement purported to sell the good will of the business, which

MEMORANDUM DECISION - 7

appeared to be of far greater value than the business hard assets, the allocation was never challenged by the Creditors or the purchase price negotiated. The Creditors were aware that they were making Royalty Payments to the Debtors for remittance to Kahala, but never inquired as to the inconsistency between this arrangement and outright franchise ownership. The Creditors have failed to establish by clear, cogent and convincing evidence that the Debtors misrepresented any facts related to the franchise or that they intended to defraud the Creditors by not transferring the franchise to them.

In a fraud claim, the plaintiff must also establish that he or she had a right to rely on the representation. See Williams v. Joslin, 65 Wn.2d 696, 697-98 (1965). In the instant case, the Creditors had no right to rely on a representation that the franchise was transferred, assuming arguendo the Debtors made such a representation. The Creditors did no investigation of the business, never discussed franchise rights with the Debtors and admittedly relied almost exclusively on the expertise of their son/stepson. The Agreement, including the Bill of Sale, did not specifically mention franchise rights. The Creditors did not ask to speak to the franchisor, Kahala, and did not request to review the Franchise Agreement even though they were aware that Kahala owned the Samurai Sam's franchise. Despite their inexperience in business matters, they employed no professionals to review the Agreement and saw it for the first time at signing. There is no indication that the Debtors promised the Creditors that the Restaurant would be profitable. Any discussions of the Profit and Loss Statements were minimal and the Creditors also elected not to have the Restaurant's financial information reviewed by a professional. The Creditors have failed to prove fraud or fraud in the inducement by a preponderance of the evidence, let alone by clear, cogent and convincing evidence.

Lastly, the Creditors allege that the Debtors have breached the contract giving rise to a claim for damages. To prevail on a breach of contract claim, the plaintiff must show an

MEMORANDUM DECISION - 8

agreement between the parties, breach, and resulting damage. <u>Lehrer v. Dept. of Social & Health Servs</u>., 101 Wn.App. 509, 516 (2000). The burden of proving all of the elements of a breach is on the party asserting the breach. As indicated above, however, the Creditors have not established that a breach occurred. The more credible evidence indicates that the Debtors did not breach the Agreement as it has not been established that a transfer of the franchise was part of the Agreement. Nor were the Creditors promised the Restaurant would be profitable. Subsequently, when Kahala informed the Creditors that it did not approve the subfranchise, the Creditors elected to not apply for a transfer of the franchise to Dragon Fire.

The Creditors have failed to establish that they are entitled to rescind the Agreement or that they are entitled to damages. The Debtors' objection to the Creditors' Proof of Claim is sustained.

Requests for attorneys' fees and costs, if any, shall be noted for hearing by separate motion.

///End of Memorandum Decision///

MEMORANDUM DECISION - 9